J-S14038-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DONALD HOLT | : | |
| | : | |
| Appellant | : | No. 1927 EDA 2024 |

Appeal from the Judgment of Sentence Entered March 1, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008706-2022

BEFORE: DUBOW, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED MAY 9, 2025**

Appellant Donald Holt appeals the judgment of sentence entered by the Court of Common Pleas of Philadelphia County after a jury convicted Appellant of aggravated assault and possession of an instrument of crime (PIC).[1] Appellant argues that the trial court abused its discretion in finding the jury's verdict was not against the weight of the evidence. We affirm.

Appellant was charged with the aforementioned offenses in connection with his November 1, 2022 attack on Lamont Greer. The trial court aptly summarized the factual background of this case as follows:

> Lamont Greer lived in an apartment in Wilson Park, a building community in Philadelphia for seniors and disabled residents. During the early evening of November 1, 2022, Mr. Greer sat for a card game of pinochle with Hanifah Abdul-Jabbar and three other players in a communal area of their building near

_____

[*] Former Justice specially assigned to the Superior Court.
[1] 18 Pa.C.S.A. §§ 2702(a)(1) and 907(a), respectively.

the building's elevators. As they were getting ready to play, [Appellant] approached the elevators in his motorized wheelchair with his girlfriend. During an encounter the prior week, Mr. Greer had told [Appellant] and [Appellant's] girlfriend that [Appellant's] girlfriend should not be dating [Appellant]. They told Mr. Greer to mind his own business.

On the day of the pinochle game, after [Appellant] and his girlfriend entered the elevator and left the communal area, [Appellant] later returned to the communal area by himself. At that time, Mr. Greer made a sound in reaction to the cards he had been dealt. [Appellant] then stood up from his wheelchair and asked aloud, "Somebody got something to say?" When nobody responded, [Appellant] walked over towards Mr. Greer and asked him directly, "Do you got something to say?" [Appellant] and Mr. Greer began cursing at each other. [Appellant] asked Mr. Greer, "Do you want to rumble?" Mr. Greer responded, "Okay." Mr. Greer suggested that they should go outside.

[Appellant] walked back to his wheelchair and retrieved a knife from a bag. [Appellant] clicked open the knife, brandished it, and made a stabbing motion towards Mr. Greer. In response, Mr. Greer picked up a chair and attempted to shield himself from [Appellant's] knife. Eventually, Mr. Greer put the chair down and tried to block the knife with his arms and hit back at [Appellant]. However, [Appellant] successfully stabbed Mr. Greer repeatedly, including in the left side of his face, the left side of his eyebrow, and the left side of his chest. [Appellant] also stated to Mr. Greer that he was going to kill Mr. Greer.

After seeing Mr. Greer's stab wounds, Ms. Abdul-Jabbar started screaming that Mr. Greer was bleeding. Mr. Greer then picked up a cane, and [Appellant] said, "I'm going to still get you." As [Appellant] tried again to stab Mr. Greer, Mr. Greer used the cane to hit the knife out of [Appellant's] hand. After [Appellant] dropped the knife, [Appellant] repeated again that he was going to kill Mr. Greer. Mr. Greer then hit [Appellant] in the head with the cane, and [Appellant] fell to the ground. The wooden cane cracked when Mr. Greer hit [Appellant]. Ms. Abdul-Jabbar kicked the knife, and one of the other pinochle players kicked it again into a nearby laundry room. [Appellant] repeatedly asked, "Where is my knife?" Ms. Abdul-Jabbar responded that she threw it in the trash. The incident ended when a security guard for the building arrived and told [Appellant] to leave. [Appellant] left the building through the front door.

When Ms. Abdul-Jabbar saw Mr. Greer bleeding profusely, she used her cellphone to call her husband, and her husband drove Mr. Greer to the hospital. Police Officer Paul Serwinski later responded to the scene and recovered the knife from the laundry room. At some point, [Appellant] walked back to the area and told Officer Serwinski, "I'm the man you're looking for, I did the stabbing." Officer Serwinski then placed [Appellant] in handcuffs.

Mr. Greer was treated at the Penn Presbyterian Emergency Department for stab wounds to his left chest and lacerations to the scalp and forehead. Upon arrival, the stab wound to his chest was bleeding rapidly. Medical staff applied a subcutaneous suture to a vein in Mr. Greer's chest to stop the bleeding. On the way to a CT scan, Mr. Greer's blood pressure began to drop, and medical staff supplied a pint of blood to him intravenously, restoring him to normal blood pressure. Mr. Greer received seven stitches on his head wound, three stitches on his chest wound, and three stitches to repair the laceration on his forehead. He was discharged from the hospital the following day. His wounds took between three and four months to heal, and more than a year later he continued to suffer from ongoing pain in his left eye.

Trial Court Opinion (T.C.O.), 12/6/24, at 1-3.

Appellant chose to proceed to a jury trial, at which the prosecution presented the testimony of Mr. Greer, Ms. Abdul-Jabbar, Officer Serwinski, and Detective Charles Dougherty. Appellant testified on his own behalf, asserting that he was acting in self-defense, claiming Mr. Greer was the initial aggressor in the conflict when he threatened to hit Appellant with a chair. Appellant asserted that it was only after Mr. Greer had begun attacking him with the cane that Appellant "made contact" with Mr. Greer with his knife.

On December 15, 2023, the jury convicted Appellant of both aggravated assault and PIC, but acquitted him of attempted murder. On March 1, 2024, Appellant was sentenced to an aggregate term of five to ten years' incarceration to be followed by four years' reporting probation. On March 7,

- 3 -

2024, Appellant filed a post-sentence motion, which the trial court denied on June 24, 2024. Appellant filed a timely notice of appeal on July 22, 2024.

Appellant raises one issue for our review on appeal, claiming the trial court abused its discretion by denying his motion for a new trial as the jury's verdict was against the weight of the evidence. Specifically, Appellant focuses on the credibility of the prosecution's witnesses, whose testimony Appellant claims was "riddled with inconsistencies." Appellant's Brief, at 11.

In reviewing Appellant's challenge to the weight of the evidence, our standard of review is as follows:

> A verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. It is well established that a weight of the evidence claim is addressed to the discretion of the trial court, and a new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial court is to determine whether, notwithstanding all the evidence, certain facts are so clearly of greater weight that to ignore them, or to give them equal weight with all the facts, is to deny justice.
>
> In reviewing a challenge to the weight of the evidence, the function of an appellate court is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence. Appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose an abuse of discretion.

***Commonwealth v. Kimmel***, 331 A.3d 26, 32–33 (Pa.Super. 2025) (quoting ***Commonwealth v. Anderson***, ––– Pa. ––––, 323 A.3d 744, 756-57 (2024)). Additionally, where a weight claim "is predicated on the credibility of trial

testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review." *Commonwealth v. Lakins*, 281 A.3d 1069 (Pa.Super. 2022) (quoting *Commonwealth v. Gibbs*, 981 A.2d 274, 282 (Pa.Super. 2009) (citations omitted)).

Appellant specifically argues that the testimony of Commonwealth's witnesses was inconsistent with their prior statements to police and their preliminary hearing testimony. Although Mr. Greer and Ms. Abdul-Jabbar testified at trial that Appellant repeatedly threatened that he was going to kill Mr. Greer, they did not tell investigators about these threats when giving their initial statements. Appellant also points out that while Ms. Abdul-Jabbar testified at Appellant's preliminary hearing that Mr. Greer had swung a chair at Appellant, she testified at trial that she did not remember whether Mr. Greer had defended himself with a chair. Appellant also notes that Mr. Greer did not testify at the preliminary hearing that he swung a chair or cane at Appellant, but admitted at trial that he did use these items during the altercation.

Appellant claims these distinctions are key as he acted in self-defense during the entire incident, which began after the two men engaged in a verbal altercation. Appellant argues that he had the pocket-knife in his possession to repair his wheelchair and only defended himself when Mr. Greer attacked him with a chair and then a cane.

Our review of the record demonstrates that Mr. Greer and Ms. Abdul-Jabbar consistently testified that Appellant had initiated an argument with Mr. Greer, threatened to kill him numerous times, and stabbed him multiple times with a knife he had concealed on his motorized chair. The prosecution presented photographic exhibits of the pool of blood left on the floor where the altercation occurred as well as the stab wounds Mr. Greer sustained to the head and chest, which are vital parts of the body.

When defense counsel attempted to impeach the prosecution's witnesses with the differences between their statements, preliminary hearing testimony, and trial testimony, both Mr. Greer and Ms. Abdul-Jabbar gave explanations for the alleged inconsistencies. Mr. Greer admitted at trial that he had used a chair and cane defensively to fend Appellant off when Appellant was attempting to stab him and threatening to kill him. Notes of Testimony (N.T.), 12/13/23, at 161-70. Ms. Abdul-Jabbar also explained that she was in an upset state when she gave her initial statement to police detectives and may not have included every detail of her account of the attack, but averred she had always told the truth. N.T., 12/13/23, at 60-61, 90-95, 104-105.

We also acknowledge that Appellant questioned Mr. Greer's credibility by pointing to the fact that Greer's treatment records from his injuries in this incident revealed that he was treated for polysubstance abuse and Mr. Greer's admission on cross-examination that he had used cocaine at some point prior to the incident. However, we find no evidence or suggestion in the record that Mr. Greer was impaired during any point of the altercation or that his admitted

use of cocaine in the past had any effect on his behavior during the relevant time period.

We find that the jury had ample opportunity to evaluate the credibility of Mr. Greer and Ms. Abdul-Jabbar as they were thoroughly cross-examined by defense counsel on these alleged inconsistencies and Mr. Greer's admission of prior drug use. Appellant also presented the jury with his version of the events at issue as he testified on his own behalf.

In its role as fact-finder, the jury was free to reject Appellant's claim of self-defense and to resolve minor inconsistencies in the Commonwealth's favor. Our courts have emphasized that "[a] jury is entitled to resolve any inconsistencies in the Commonwealth's evidence in the manner that it sees fit." *Commonwealth v. Jacoby*, 642 Pa. 623, 650, 170 A.3d 1065, 1080 (2017) (citation omitted). While Appellant asks this Court to reweigh the evidence and accept his version of the events in question, we may not substitute our judgment for that of the jury. It is well-established that "[t]he weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Spence*, 290 A.3d 301, 311 (Pa.Super. 2023) (quoting *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa.Super. 2015)). As a result, we conclude that the trial court did not abuse its discretion in denying Appellant's challenge to the weight of the evidence.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>5/9/2025</u>